Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7205 | **DATE** | 4/30/2004 |
| **CASE TITLE** | David Toma vs. County of Kane, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Toma fails to raise a genuine issue of material fact that would, even with the requisite favorable inferences, support either his individual-capacity claims or his claims against the Sheriff's Office (though Ramsey in his official capacity). Gordon, Carter and Ramsey are therefore entitled to a judgment as a matter of law. Their Rule 56 motion is granted, and this action is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 3 2004 date docketed | |
| | Notified counsel by telephone. | | | 22 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 4/29/2004 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID TOMA, )
)
        Plaintiff, )
)
v. ) No. 01 C 7205
)
COUNTY OF KANE, et al., )
)
        Defendants. ) MAY 03 2004

MEMORANDUM OPINION AND ORDER

David Toma ("Toma") brings this 42 U.S.C. §1983 ("Section 1983") action against Kane County Sheriff Kenneth Ramsey ("Ramsey"), Sergeant Wayne Gordon ("Gordon") and Sergeant Wayne Carter ("Carter"), asserting a violation of his constitutional rights.[1] Toma alleges that he was attacked by fellow inmates when he was a pretrial detainee at the Kane County Jail and that Ramsey, Gordon and Carter had been aware of the threat to Toma's safety but did nothing to prevent the attack. Toma also contends that Ramsey should be held responsible in his official capacity as Sheriff because, according to Toma, it was Sheriff's Office policy to deny all requests for transfer--even where a prisoner's

---

[1] On April 21, 2003 this Court sua sponte restored Kane County as a party defendant (it had originally been named in the Complaint, but it was promptly dismissed based on then-existing law) because the later decision in Carver v. Sheriff of LaSalle County, 324 F.3d 947, 948 (7th Cir. 2003)(per curiam) had called for such action on the ground that Illinois state law requires the County to reimburse the Sheriff for any judgment imposed against him, so the County is an indispensable party. Because Toma makes no allegations against Kane County, its interest in this litigation rises and falls with that of Sheriff Ramsey.



safety was in jeopardy--because the jail was just too crowded to accommodate such requests.

All defendants jointly moved for summary judgment and complied with this Court's LR 56.1.[2] For the reasons stated in this memorandum opinion and order, their motion is granted and this action is dismissed.

## Summary Judgment Standards

Familiar Rule 56 principles impose on movants Ramsey, Gordon and Carter the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "consider the evidentiary record in the light most favorable to the non-moving party...and draw all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001) has explained the test for summary judgment by echoing Anderson v.

---

[2] Toma unfortunately made no attempt to comply with that rule: He failed to submit any response to defendants' statement or his own statement of additional facts, as LR 56.1(b)(3) expressly requires. That provision also spells out the consequences:

> All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

Myriad cases such as Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) uphold the strict application of that rule. Such a total admission would certainly be fatal to Toma's case, but because he loses in any event, this opinion avoid taking that drastic step.

2

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

As with any summary judgment motion, this Court views all disputed facts in Toma's favor and accepts his version of events, but only so long as there is supporting evidence in the record. Because Toma has not separately submitted any record evidence, what follows was culled from the record as provided by defendants.

## Background

On August 15, 1999 Toma had an altercation with fellow inmate Robert Moore ("Moore"), in consequence of which Toma was placed in a segregated cell for a few days (Toma Dep. 8). When Toma was released from segregation, prison officials assigned him to cell block 161 (id. 10).

Toma feared that other members of Moore's gang that occupied cell block 161 planned to beat him up, so he asked two corrections officers Gordon and Carter to reassign him to a different cell block (Toma Dep. 6-7). Every day for at least 20 days Toma told Gordon and Carter that other inmates had threatened to beat him up because of gang affiliation (id. 7-8). But, because he was concerned that he would be in an even worse situation if he were to rat on other inmates, he never gave Gordon or Carter any specific information (such as who had

threatened him or with which gang they were affiliated (id. 26).
Neither Gordon or Carter ever responded to Toma's requests, other
than to say that the jail was too crowded to move him to a
different cell block (id. 25).

On the early morning of September 23, 1999 Toma's fears came
true--he was jumped by two fellow inmates of cell block 161 (Ex.
7 at 2). Not long after the incident Carter came around to pick
up breakfast trays and discovered a bloodied Toma, whom Carter
immediately took to the infirmary. Toma timely filed this
Section 1983 action on September 18, 2001 to recover for the
injuries he sustained that day back in September 1999.

## Individual-Capacity Liability

All defendants recognize that Section 1983 prohibits jail
officials from acting with deliberate indifference toward a
prisoner's safety (Farmer v. Brennan, 511 U.S. 825, 835-39
(1994)).[3] But Gordon, Carter and Ramsey correctly maintain that
they cannot be found to be deliberately indifferent unless they
had actual knowledge of a specific threat to Toma's safety: To
survive summary judgment, Toma must point to some evidence that
raises a genuine issue as to whether Gordon, Carter or Ramsey had
"actual knowledge of impending harm easily preventable, so that a

---

[3] This opinion need not decide whether Toma should be
considered a pre-trial detainee (as he claims) or as a prisoner
serving time (as defendants would have it), because the same
"deliberate indifference" standard applies in any event (Palmer
v. Marion County, 327 F.3d 588, 593 (7th Cir. 2003)).

4

conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it" (McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir. 1991); see also Butera v. Cottey, 285 F.3d 601, 605 (7th Cir. 2002)).

Toma falls well short on that score. Although he may have told Gordon and Carter every day about threats to his safety from unspecified "other inmates," he admits that he never gave them the names of prisoners who were threatening him, nor did he even identify a gang to which they belonged (Ex. 1 at 7, 25). Instead he simply voiced generalized concerns to Gordon and Carter, apparently expecting them to fill in the blanks.[4] Without their having received any such specific information, so that they could have taken preventive measures to protect Toma against identified perils, it cannot be said that Gordon or Carter acted with deliberate indifference to Toma's safety.

Toma might perhaps argue that the guards should have removed him from the general population when he voiced his nonspecific concerns for his own safety. Indeed, it might be thought in

---

[4] No arguable predicate exists for Toma's claim against Ramsey in his individual capacity, for Toma makes no assertion that Ramsey had ever received any complaints about Toma's safety. As Zimmerman v. Tribble, 226 F.3d 568, 574 (7th Cir. 2000) (internal quotation marks omitted) teaches:

> However, §1983 does not allow actions against individuals merely for their supervisory role of others. An individual cannot be held liable in a §1983 action unless he caused or participated in [the] alleged constitutional deprivation.

5

hindsight that protective custody designation would have been a sensible step to take under the circumstances.[5] But Gordon, Carter and Ramsey may not be held liable for failing to choose that option. As <u>Frake v. City of Chicago</u>, 210 F.3d 779, 782 (7th Cir. 2000) explains:

> A defendant is not, however, required to guarantee the detainee's safety. The existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent.

Without any evidence to show, or to raise a reasonable inference, that Gordon, Carter and Ramsey had knowledge of a specific threat to which a specific protective response was appropriate, Toma's Section 1983 individual capacity claims fail as a matter of law.

### Ramsey in His Official Capacity

Toma's lawsuit against Ramsey in his official capacity must be understood for what it really is--a suit against the Kane County Sheriff's Office. <u>McMillian v. Monroe County</u>, 520 U.S. 781, 785 n.2 (1997) (internal quotation marks, brackets and citations omitted) makes that plain:

> We have explained that a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent, and that victory in

---

[5] It is worth noting, though, that there are risks involved in protective custody as well, both to the prisoner from other protective custody inmates (see <u>Williams v. Lane</u>, 646 F.Supp. 1379, 1395 (N.D. Ill. 1986), <u>aff'd</u> 851 F.2d 867 (7th Cir. 1988)) and to the prison administration in terms of being rendered vulnerable to claims by the prisoner of being deprived of constitutional rights such as those addressed in <u>Williams</u>.

6

such an official-capacity suit imposes liability on the entity that the officer represents.

And Gable v. City of Chicago, 296 F.3d 531, 537 (7th Cir. 2002) lists three alternative showings that Toma could make to hold the Sheriff's Office responsible:

1. that the Sheriff's Office maintained an express policy that deprived Toma of a constitutional right; or

2. that a well settled and widespread practice within the Sheriff's Office caused his constitutional deprivation; or

3. that the actions of a person with final policymaking authority were responsible for his constitutional injury.

Toma proffers nothing to suggest that Ramsey (or any other person with final policymaking authority, for that matter) was somehow directly responsible for Toma's injuries, and of course the Sheriff's Office cannot be held responsible on respondeat superior principles (Gable, 296 F.3d at 537). Toma does advance one assertion that fits one of the three Gable categories and might potentially inculpate the Sheriff's Office: that the Sheriff's Office had a policy of denying transfer requests because of jail overcrowding. But that claim fails too, for even if the jail was too crowded to move Toma as he claims, those conditions must be shown to have been the "moving force" behind his injuries--and given the record before this Court, Toma has not created a genuine issue in that regard.

Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404 (1997)(emphasis in original) states in clear and

precise terms what Section 1983 requires--and what is lacking here:

> As our §1983 municipal liability jurisprudence illustrates, however, it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its <u>deliberate</u> conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

So even if Toma could prove that the jail was overcrowded so that he could not have been transferred out of cell block 161, that fact alone does not entitle Toma to damages from the Sheriff's Office. He must also show that the Sheriff's Office deliberately refused to move him in conscious disregard of the known or obvious consequence--here, that Toma would get beaten up (Bd. of County Comm'rs, id. at 413 n.1). Nothing in the record raises a genuine issue in those terms, so that Toma's official capacity claim also fails as a matter of law.

## Conclusion

Toma fails to raise a genuine issue of material fact that would, even with the requisite favorable inferences, support either his individual-capacity claims or his claims against the Sheriff's Office (through Ramsey in his official capacity). Gordon, Carter and Ramsey are therefore entitled to a judgment as a matter of law. Their Rule 56 motion is granted, and this

action is dismissed.

_[signature: Milton I. Shadur]_
Milton I. Shadur
Senior United States District Judge

Date: April 30, 2004